UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

MICHAEL S. JOHNSON,

                Plaintiff,

v.                                                     Case No. 19-cv-0972-bhl

JOHN KIND, et al.,

                Defendants.

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (ECF NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**
_____

      Plaintiff Michael S. Johnson, who is confined at the Green Bay Correctional Institution (GBCI) and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants retaliated against him and denied him due process, in violation of the First and Fourteenth Amendments to the U.S. Constitution. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee (ECF No. 2) and screens his complaint (ECF No. 1).

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (ECF No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. §1915(h). The PLRA allows a court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

1

On July 9, 2019, the Court ordered the plaintiff to pay an initial partial filing fee of $2.68. (ECF No. 5.) The plaintiff paid that fee on July 29, 2019. The Court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, a court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes liberally complaints filed by plaintiffs who are representing themselves. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. The Plaintiff's Allegations

The plaintiff sues GBCI Security Director John Kind; GBCI Captain, Security Threat Group Coordinator, and mailroom supervisor William Swiekatowski; and GBCI Lieutenant and Restrictive Housing Unit Hearing Officer Andrew Wickman. (ECF No. 1, ¶¶4–6.) He sues the defendants in their official and individual capacities. (*Id.*)

*1. Retaliation*

The plaintiff alleges that in December 2018, he spoke on the phone with his nephew, who told the plaintiff he was going to send him a letter and pictures in the mail. (ECF No. 1., ¶8.) A week later, the plaintiff had not received the letter and photos and never did receive them. (*Id.*, ¶¶9–10.) Another week later, the plaintiff filed an inmate complaint against Swiekatowski and other mailroom officers for retaliating against him by taking the photos his nephew had sent. (*Id.*, ¶11.) Swiekatowski allegedly responded by filing a fabricated disciplinary report against the plaintiff, charging him with resistance and aiding and abetting an assault. (*Id.*, ¶12.) On January 9, 2019, the plaintiff attended his hearing on the disciplinary charge, where Swiekatowski provided false testimony and told the plaintiff he should have "taken the notice of non-delivery as a warning and stopped complaining about your mail." (*Id.*, ¶13.) The plaintiff

3

asserts that Swiekatowski's comments refer to the inmate complaint he had filed that accused Swiekatowski of mail-tampering. (*Id.*, ¶15.)

### 2. *Denial of Due Process*

The plaintiff alleges that Wickman served him with the notice of the January 9, 2019, disciplinary hearing and offered him an uncontested disposition of 360 days' disciplinary segregation. (ECF No. 1, ¶¶16–18.) The plaintiff told Wickman that Swiekatowski had fabricated the charges in retaliation for his complaint. (*Id.*, ¶19.) Wickman told the plaintiff that his comment was a denial of his offer and told him that by proceeding to a hearing, the plaintiff was "going full due process." (*Id.*, ¶20.) A day before the hearing, the plaintiff asked Wickman why he would not listen to his protestations of innocence, and Wickman told him he believed in his guilt and that he, Kind, and the Deputy Warden (not a defendant) believed 360 days' segregation was an appropriate punishment. (*Id.*, ¶¶22–23.)

In preparation for the hearing, the plaintiff submitted a request for witnesses to attend his disciplinary hearing. (ECF No. 1, ¶26.) Kind allowed Swiekatowski to appear but denied the plaintiff's request to allow another inmate to attend. (*Id.*, ¶27.) At the hearing, Wickman allegedly refused to listen to the plaintiff's objections, did not accept his evidence, and found the plaintiff guilty of both charges despite allegedly having no evidence of the plaintiff's guilt. (*Id.*, ¶¶29–32.) Wickman imposed 360 days' disciplinary segregation while acknowledging that the plaintiff was "going to scream this is retaliation or some other violation and sue me." (*Id.*, ¶33.)

The plaintiff successfully appealed Wickman's decision. (ECF No. 1, ¶¶34–35.) Wickman told the plaintiff he was going to impose the same sentence and said that holding another hearing would only "waste time." (*Id.*, ¶36.) The plaintiff complained about Wickman's comments and asked him "to stop helping Cpt. Swiekatowski retaliate against him." (*Id.*, ¶37.)

Before the rehearing, the plaintiff asked Kind for: (1) attendance and testimony from an unknown staff member and other inmates; (2) the admission of body-camera footage; and (3) other evidence showing plaintiff did not aid or abet the assault. (*Id.*, ¶¶38–39.) Kind allegedly denied the plaintiff's request for witnesses and evidence, fabricated the involvement of an inmate-complaint examiner, and lied about the unavailability of body-camera footage. (*Id.*, ¶¶40–49.)

About a month after the first hearing, Wickman presided over the rehearing, during which the plaintiff objected to Kind's decision to deny him witnesses and evidence and asserted that the officers were retaliating against him. (ECF No. 1, ¶¶52–53, 58.) Wickman imposed a sentence of 360-days' disciplinary segregation, in which the plaintiff alleges he has lived for the past three years. (*Id.*, ¶¶60–61.) The plaintiff asserts that during those three years, he has been subjected to excessive noise and bright lights twenty-four hours per day, a near-total deprivation of recreation time, poor air quality, infrequent showers, dirty toilets, isolation from human contact, limited paper property and no electronic property, limited time in the law library and with visitors, a deprivation of religious services, and soiled clothes that he must wear. (*Id.*, ¶61.) The plaintiff unsuccessfully appealed his disciplinary sentence, and the decision denying his appeal allegedly failed to address his due-process concerns. (*Id.*, ¶¶63–65.) He filed another grievance concerning the rehearing but does not provide the results of his grievance. (*Id.*, ¶66.)

### 3. *Claims and Relief Requested*

The plaintiff asserts that Swiekatowski retaliated against him for filing an inmate complaint by issuing the false disciplinary report. (ECF No. 1, ¶68.) He asserts that Kind denied his right to due process by denying him witnesses and evidence at the rehearing. (*Id.*, ¶67.) He further asserts that Wickman violated his right to due process by conducting a biased and unfair

5

disciplinary hearing and rehearing. (*Id.*, ¶69.) He seeks declaratory relief, injunctive relief ordering his release from segregation and expungement of his disciplinary charges, and compensatory and punitive damages. (*Id.* at 17.)

**C. Analysis**

*1. Official-Capacity Claims*

The plaintiff's claims against the defendants in their official capacities are construed as against the GBCI and, in turn, against the Wisconsin Department of Corrections (WDOC). *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Because claims against the WDOC are "no different from a suit against the State itself," these claims are construed as having been brought against the State of Wisconsin. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But a state is not a "person" against whom the plaintiff may recover monetary damages under 42 U.S.C. §1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). The plaintiff, therefore, may not sue the defendants in their official capacities for damages in this lawsuit.

The Supreme Court has clarified that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. 159, 167 n. 14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). The plaintiff seeks prospective, injunctive relief in the form of his release from segregation and expungement of his disciplinary conviction. But that relief "attack[s] the validity of the proceedings and their outcome" and is available only through a petition for habeas corpus. *Olson v. Humphreys*, No. 07-C-682, 2007 WL 2570231, at *3 (E.D. Wis. Aug. 30, 2007);

6

Case 2:19-cv-00972-BHL   Filed 10/06/20   Page 6 of 13   Document 7

*see Wilks v. Rymarkiewicz*, 667 F. App'x 549, 551 (7th Cir. 2016) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), and *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000)) ("The only way for [the plaintiff] to challenge in federal court a disciplinary conviction that prolongs his custody is by filing a habeas petition under 28 U.S.C. § 2254."). The plaintiff, therefore, fails to state a valid claim for relief against the defendants in their official capacities.

    2. *Individual-Capacity Claims*

        a. First Amendment – Retaliation

The plaintiff first asserts that Swiekatowski retaliated against him for filing an inmate complaint against him by filing a false disciplinary report against the plaintiff. To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010), and *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). "'[A] complaint need only allege a chronology of events from which retaliation may be inferred.'" *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)).

The plaintiff's allegations state a claim of retaliation. The filing of a previous inmate complaint is protected activity. *See DeWalt*, 224 F.3d at 618. Facing a disciplinary report because of that activity likely would prevent an inmate from filing future complaints. *See id.* at 619. And the plaintiff alleges that Swiekatowski filed the false disciplinary report days after he had filed his inmate complaint and later told him at his disciplinary hearing that he should have "stopped complaining about your mail," a reference to the plaintiff's inmate complaint asserting that Swiekatowski had withheld his mail. From this sequence of events, one could infer that

7

Swiekatowski was retaliating against the plaintiff for filing the inmate complaint against Swiekatowski.

Although the plaintiff states a valid claim of retaliation, he may not proceed on this claim. A prisoner may not raise claims in a civil rights action challenging a disciplinary conviction if a judgment on the merits of those claims "would necessarily demonstrate the invalidity" of that disciplinary conviction. *Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) (emphasis omitted); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The plaintiff alleges that Swiekatowski fabricated the disciplinary report he filed against the plaintiff in retaliation. The plaintiff was found guilty after a hearing on the charges in that report. The conviction was later vacated, but the plaintiff was again convicted and sentenced after a rehearing. A decision in the plaintiff's favor on his claim that Swiekatowski fabricated the disciplinary report would necessarily undermine the validity of the disciplinary proceedings that followed, both the initial hearing and the rehearing, because they were based on the report. *See Stewart v. Smith*, 124 F.3d 205, 1997 WL 527747, *2 (7th Cir. 1997) (unpublished decision) (concluding that *Edwards* barred plaintiff's claim that his "disciplinary charge was false, and brought in retaliation for his jailhouse lawyer activities," because proof of his allegations "would undermine the validity of the disciplinary finding"). The plaintiff is therefore barred from proceeding on his retaliation claim unless and until his most recent disciplinary sentence is invalidated. *See id.*

### b. Fourteenth Amendment – Due Process

The plaintiff asserts that Wickman and Kind violated his right to due process during his disciplinary hearing and rehearing by ignoring his objections, disallowing his witnesses and evidence, and otherwise failing to hold a fair and impartial hearing. "The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v.*

*Brown*, 856 F.3d 508, 524 (7th Cir. 2017).  A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed prolong his incarceration or constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Court must consider "'both the duration *and* the conditions of the segregation'" when determining whether he has alleged the deprivation of a protected interest.  *Ishby*, 856 F.3d at 524 (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (citation omitted)).  If he has, then the Court must determine what process was due and whether he was deprived of it.  *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

A long stint in disciplinary segregation does not create a protected liberty, even if it lasts the entire length of the prisoner's incarceration.  *Hernandez v. Hanks*, 65 F. App'x 72, 74 (7th Cir. 2003) (citing *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997), and *Sandin*, 515 U.S. at 484).  But a year of segregation in conditions that are "significantly harsher than those in the normal prison environment" could constitute a deprivation of liberty.  *Id.* (citing *Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir. 1996), *abrogated on other grounds by Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998)).  The plaintiff alleges that he was sentenced to 360 days' disciplinary segregation, in which he faced deplorable conditions.  Those allegations suffice to state a deprivation of a protected liberty interest at this stage of the pleadings.  *See Marion*, 559 F.3d at 699.

Even if the conditions of his segregation were not sufficiently harsh to trigger due-process protection, the plaintiff's disciplinary sentence automatically extended his mandatory release date*.  See Whiteside v. Tegels*, No. 11-CV-662-WMC, 2013 WL 5442361, at *2 (W.D. Wis. Sept. 30, 2013) (citing Wis. Stat. §302.11(2)(a)–(b)); Wis. Admin. Code DOC §303.72(1)–

9

(2) and Table DOC 303.72.  The plaintiff was therefore entitled to a disciplinary hearing "that was consistent with the minimum amount of due process." *Id.* (citing *Sandin*, 515 U.S. at 483–84).  That process includes written notice of the charges at least twenty-four hours before the hearing, an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," and a written statement by the factfinder of the evidence he relied on and reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974); *see Edwards*, 520 U.S. at 647.

The plaintiff alleges that Kind disallowed him from calling certain witnesses and obtaining and presenting certain evidence in his case.  He alleges that Wickman prevented him from presenting exculpatory evidence and found him guilty of the disciplinary charges despite having no evidence of the plaintiff's guilt.  Taking his allegations as true, as the Court must at this stage of the proceedings, the plaintiff states a claim that he was denied the process due.

As with his retaliation claim, however, there is a wrinkle to his due-process claims.  The plaintiff claims that Wickman was an unfair and biased decisionmaker, whose bias led him to ignore "the plaintiff's objections and evidence of his innocence."  (ECF No. 1, ¶31.)  That claim, like his retaliation claim, "necessarily impl[ies] the invalidity of the punishment imposed, [and] is not cognizable under §1983" unless the disciplinary conviction has been reversed or set aside.  *Edwards*, 520 U.S. at 648; *see Olson*, 2007 WL 2570231, at *3.  The plaintiff alleges that the conviction imposed at his first disciplinary hearing was reversed on appeal.  He may proceed on his due-process claim against Wickman based on that hearing.  But because the plaintiff does not allege that the punishment imposed at his rehearing has been reversed or set aside, he is barred from proceeding on his due-process claim against Wickman based on the rehearing.

10

The plaintiff similarly claims that Kind arbitrarily denied his request for witnesses and evidence, lied about the availability of body-camera footage, and fabricated other evidence. (ECF No. 1, ¶¶27–28, 40–49.) Although these claims call into question Kind's actions related to the hearing and rehearing, they do not necessarily imply the invalidity of the disciplinary proceedings. Kind denied the plaintiff's request for witnesses and evidence more than two weeks before the rehearing. The plaintiff knew at that time that his rights had been violated regardless of what happened later at the rehearing. These due-process claims are "not dependent upon anything that happened at the disciplinary hearing" and do not require the Court to decide whether the disciplinary process itself was invalid. *Clayton-El v. Fisher*, 96 F.3d 236, 243 (7th Cir. 1996); *see Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (quoting *Heck*, 512 U.S. at 482–83, 487) (noting that *Heck* may not bar a plaintiff from seeking damages against an official "for using the wrong procedures, not for reaching the wrong result," so long as the challenge does not "necessarily imply the invalidity of" the proceedings). *Heck* does not bar the plaintiff from proceeding on these claims.

The plaintiff, therefore, may proceed on his due process claim against Wickman in his individual capacity based on the original hearing, which was reversed on appeal. He may not proceed on his claim against Wickman related to the rehearing because that disciplinary conviction has not been reversed or set aside. He may proceed on his claims against Kind in his individual capacity related to his actions before both the hearing and rehearing. As discussed above, the plaintiff may not seek his proposed injunctive relief in any of his claims. The plaintiff may seek only declaratory relief and damages.

### III. Conclusion

The Court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. (ECF No. 2.)

The Court **ORDERS** that defendant William Swiekatowski is **DISMISSED** from this case.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants John Kind and Andrew Wickman. Under the informal service agreement, the Court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The Court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $347.32 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The Court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The Court **ORDERS** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

The Court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The Court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the Court sets, the Court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the Court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the Court advised of his whereabouts may result in the Court dismissing this case without further notice.

Dated at Milwaukee, Wisconsin this 6th day of October, 2020.

BY THE COURT:

s/ Brett H. Ludwig_____
BRETT H. LUDWIG
United States District Court Judge