MICHAEL S. JOHNSON,

        Plaintiff,

      v.                                                           Case No. 19-cv-0972-bhl

JOHN KIND, et al.,

        Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael Johnson, an inmate at the Green Bay Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on claims arising under the First and Fourteenth Amendments in connection with a conduct report of which he was found guilty and disciplined with 360 days in segregation. The parties have filed cross-motions for summary judgment, which are fully briefed and ready for the Court's decision. For the reasons explained below, the Court will deny Johnson's motion and grant in part and deny in part Defendants' motion.

### BACKGROUND

**1. The Parties**

Johnson has been housed at Green Bay Correctional since January 22, 2016. Defendants worked at Green Bay at the relevant time. John Kind was the Security Director, and Andrew Wickman was a supervising officer who served as a hearing officer for disciplinary hearings related to conduct reports. William Swiekatowski was also a supervising officer who served as the security threat groups (STG) coordinator. As STG coordinator, Swiekatowski tracked gangs in

the institution, assisted in investigations of gang activity, and documented gang activity. Dkt. No. 78 at ¶¶4, 8-9; Dkt. No. 82 at ¶¶1-4.

According to Defendants, Johnson is an active member of the Vice Lords, a violent gang whose members are involved in many criminal activities and pose a high risk to the safety of other inmates and staff. He has been a confirmed member of this gang since 1996 and is considered a high-ranking member. Johnson denies that he is a current member or leader of the Vice Lords. He explains that in 2010 and again in 2014 he privately and publicly denounced his gang affiliation. According to Johnson, prison officials refuse to acknowledge or accept his decision to leave his gang involvement behind. Dkt. No. 78 at ¶¶11-12; Dkt. No. 82 at ¶7.

2.  **The Conduct Report**

Defendants assert that Johnson arranged the delivery of a letter he wrote to inmate Joseph Cloud sometime in August 2018. Swiekatowski believed Johnson wrote the letter because the letter states that the writer was housed in cell 518 and asks, "are you with your Big Bro Amir." Defendants explain that Johnson lived in cell 518 at the time and his Muslim name is Amir Sigidi Mikail Elshabazz. Swiekatowski also recognized Johnson's handwriting. The letter references the Native Soldiers gang working with the Vice Lords. It also directs Cloud to create a business plan to earn money in the prison and reminds him of the Vice Lords coming to his aid when he was assaulted. Defendants explain that the letter violated the rules of aiding and abetting assault, and group resistance and petitions. Johnson denies that he wrote the letter. He explains that he does not know Cloud and has never met him. Dkt. No. 78 at ¶¶15-17, 87; Dkt. No. 82 at ¶6, 9, 13; Dkt. No. 20 at ¶16.

On October 7, 2018, Johnson submitted an information request asking about missing mail. He was directed to ask Swiekatowski because he was in charge of the mailroom. A few days later,

2

Swiekatowski refused to deliver some of Johnson's mail and directed that Johnson be given a notice of non-delivery. Later that month, on October 24, 2018, Johnson filed an inmate complaint challenging the notice of non-delivery. Just over a month later, Johnson filed a second inmate complaint about more missing mail. On December 18, 2018, the institution complaint examiner contacted Swiekatowski about Johnson's inmate complaints. Dkt. No. 82 at ¶¶24-29.

Within hours of being contacted by the institution complaint examiner, Swiekatowski issued Johnson a conduct report in connection with the letter to Cloud, charging Johnson with aiding and abetting assault, and group resistance and petitions. Even though Swiekatowski states that he had started his investigation into the letter months earlier, he explains that he waited to issue the conduct report until after Cloud was transferred to a different institution. The next day, Kind, as Security Director, classified the conduct report as a major violation, and Wickman was assigned as the hearing officer.

Per §DOC 303.78, an inmate can consent to an uncontested disposition following a hearing officer's pre-hearing review of materials, including the conduct report and any supporting evidence. Wickman began his pre-hearing review and also considered mitigating factors and enhancers. Among the aggravating factors were Johnson's documented history as a high-ranking member of the Vice Lords and his alleged request that the Native Soldiers align with the Vice Lords. Based on this review, Wickman concluded that any uncontested disposition offer he would make to Johnson would be far more than 120 days of segregation, so approval by the deputy warden would be required. Wickman met with the deputy warden and provided him with the information he had reviewed. The deputy warden then approved a disposition of up to 360 days in segregation. On December 20, 2018, Wickman made an offer to Johnson to accept an

3

uncontested disposition of 360 days in segregation. Johnson refused the offer, so the conduct report proceeded to a hearing as a contested major conduct report. Dkt. No. 78 at ¶¶20-27, 88.

### 3. January 9, 2019 Disciplinary Hearing

Prior to the hearing, Johnson requested that the following witnesses be available: (1) the staff or inmate who gave the letter to Swiekatowski and told him it was from Johnson; (2) Cloud, so Johnson could ask if and how the letter was delivered to him; and (3) Swiekatowski because he issued the conduct report. He also requested that the letter and envelope be available, and he submitted questions for each witness to prove that he did not write the letter or have dealings with Cloud. Dkt. No. 78 at ¶¶35-36.

As Security Director, Kind was responsible for reviewing Johnson's witness requests. He approved Swiekatowski as a witness as well as use of the letter as evidence. He denied Johnson's request that Cloud appear as a witness because Cloud had been transferred to another institution and therefore was "unavailable" under §DOC 303.84. Kind did not address Johnson's request for the person who had given Swiekatowski the letter because there was no identifying information; he decided Swiekatowski could address those questions. Kind then sent his decision to Wickman for the hearing. Dkt. No. 78 at ¶¶39-40.

The hearing was set for January 9, 2019 with Wickman serving as hearing officer. At the hearing, Johnson denied writing the letter, and, according to Johnson, Swiekatowski was unwilling to identify the person to whom he believed Johnson had given the letter. Johnson asserts that at the hearing Swiekatowski told him that he should have taken the notice of non-delivery as a warning and stopped complaining about his mail. Swiekatowski denies that he said anything to Johnson about him filing inmate complaints during or after the hearing. He explains that his testimony focused only on the letter.

Wickman asserts that he listened to Johnson's statement and Swiekatowski's testimony and reviewed the conduct report, the letter to Cloud, and a summary of Johnson's prior gang activity and associations. Wickman found Swiekatowski's testimony to be more credible than Johnson's, so based on the evidence, Wickman found Johnson guilty of group resistance and petitions and aiding and abetting assault. He ordered 360 days of segregation as the disposition. Dkt. No. 78 at ¶¶47-54; Dkt. No. 82 at ¶43.

4. **Appeal and February 14, 2019 Re-Hearing**

Johnson appealed the disposition to the warden, arguing, in part, that his due process rights had been violated because his witness request for the person who had given the letter to Swiekatowski had been ignored. The deputy warden returned the case to Wickman to conduct a re-hearing, noting that Kind should approve or deny Johnson's witness request. Dkt. No. 78 at ¶¶58-59.

Prior to the re-hearing, Johnson requested as a witness the "[u]nidentified officer/staff member" who could answer Johnson's questions about "dates, time, location and when [he] gave this letter to him/her and why is he/she lying . . . ." He also requested that Cloud be available and included questions that his advocate could ask Cloud if he was unable to attend the hearing. Specifically, Johnson wanted Cloud to testify about whether he and Johnson had ever met and whether three other inmates had ever said they received orders from Johnson to help Cloud. Dkt. No. 82 at ¶47; Dkt. No. 25-1 at 8-9.

At the first disciplinary hearing, Swiekatowski had testified that Johnson had given the letter to a staff member. At the second hearing, Kind decided that institution complaint examiner Alan DeGroot would testify about delivery of the letter. According to Kind, he understood that the letter had been placed in the inmate complaint box, from which DeGroot retrieved it and then

5

gave it to Swiekatowski. Kind did not explain who would have put the letter in the inmate complaint box, but because the box is in a different unit from where Johnson was housed, it could not have been Johnson. He again noted that Cloud was unavailable because he had been transferred to another institution. Finally, he decided that one of three inmates would be allowed to testify concerning whether Johnson had ordered them to protect Cloud. Dkt. No. 78 at ¶¶64-66; Dkt. No. 82 at ¶48; Dkt. No. 25-1 at 15.

The rehearing took place on February 11, 2019. At the rehearing, Johnson provided a statement, and DeGroot, Swiekatowski, and another inmate, who Johnson had not requested, testified. Wickman concluded that it was "more likely than not Johnson [was] participating in a group that is recognized as a Security Threat Group" and that Johnson had "direct[ed] his brothers within his group to become allies with another Security Threat Group." Dkt. No. 74 at ¶80. Johnson was given a disposition of 360 days in segregation.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show

6

that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Johnson asserts three claims. First, he alleges that Swiekatowski retaliated against him by giving him a conduct report for something he did not do because he learned that Johnson had filed inmate complaints complaining about Swiekatowski not delivering his mail. Second, Johnson asserts that Kind denied his right to due process when he denied Johnson's requests to have certain witnesses testify at the January 9 and February 11 hearings. Third, he claims that Wickman violated his right to due process because he was an unfair and biased decision maker who predetermined Johnson's guilt without considering evidence of Johnson's innocence. The Court will consider each claim in turn.

**I.     The Record Is Sufficient to Create a Jury Issue on Johnson's Retaliation Claim Against Swiekatowski.**

To prevail on a retaliation claim, a plaintiff must show that he "engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). The Defendants agree for purposes of summary judgment that Johnson meets the first two elements—that he engaged in protected activity and suffered a deprivation that would likely deter future protected activity. As such, Johnson's claim turns on whether he has presented evidence from which a jury could reasonably conclude that Swiekatowski's action was motivated by Johnson filing inmate complaints about him. The Court concludes that he has.

Johnson points out that, although Swiekatowski began investigating the letter to Cloud in August, he did not issue the conduct report until December 18, 2018, and did so just hours after the institution complaint examiner asked Swiekatowski questions about Johnson's inmate complaints. Further, Johnson asserts that, after Swiekatowski testified at the first disciplinary hearing, he told Johnson that he "should've taken the Notice of Non-Delivery as a warning and stopped complaining about [his] mail." Dkt. No. 82 at ¶15. While suspicious timing alone is rarely sufficient to create a triable issue of fact, *see Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020), Johnson couples his assertion of suspicious timing with evidence supporting a conclusion that his protected activity was at least a motivating factor in Swiekatowski's action. *See Jones v. Van Lanen*, 27 F.4th 1280, 1284-85 (7th Cir. 2022).

Swiekatowski insists that he delayed writing the conduct report until after Cloud was transferred to a new institution. While this may be plausible, this explanation is for the finder-of-fact to accept or reject; its veracity cannot be resolved on summary judgment. Indeed, the explanation does not answer all questions. For example, Swiekatowski does not explain why it was necessary to wait until after Cloud was transferred. Nor does he explain why he did not issue the conduct report until December 18, 2018, when, according to the DOC online inmate locator, Cloud was transferred eleven days earlier, on December 7, 2018. Similarly, Swiekatowski's denial that he made any comments to Johnson at the disciplinary hearing about the mail issue stand in contradiction to Johnson's assertions, and if a jury were to credit Johnson's testimony, it could reasonably conclude that Swiekatowski gave Johnson the conduct report because Johnson filed inmate complaints about him. Given these material disputes, neither party is entitled to summary judgment.

## II. A Jury Could Reasonably Conclude that Kind Violated Johnson's Due Process Rights When He Denied Johnson's Witness Requests for the Second Disciplinary Hearing.

As noted, Kind twice denied, in part, Johnson's requests for witnesses at his disciplinary hearings. Kind first denied Johnson's witness requests in connection with the January 9 hearing. He then did so again in connection with the February 14 rehearing. Because a rehearing was ordered following Johnson's appeal and because the time he served in segregation following the first hearing was credited toward the disposition he received following the re-hearing, Johnson suffered no harm as a result of any alleged due process violation in connection with the first hearing. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that to prevail on a claim for damages under §1983, a plaintiff must show the violation caused him injury or damages). Accordingly, the Court's analysis will focus on Kind's denial of Johnson's second witness requests.

To prove a due process claim, a plaintiff must show two elements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Defendants agree that Johnson's disposition of 360 days in segregation is sufficient to implicate a liberty interest, so the Court will focus its analysis on the procedures that Johnson was afforded. In prison disciplinary hearings, due process entitles prisoners, in part, the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974); *McPherson v. McBride*, 188 F.3d 784, 785–86 (7th Cir. 1999). To prevail on such a claim, a plaintiff must not only show that there was an error, but also that he was prejudiced by the error. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

9

Johnson asserts that Kind violated his right to due process when he denied two of his witness requests. Johnson first requested that Cloud be called as witness. Johnson maintains that he does not know Cloud and has never interacted with him. Were Cloud to confirm that the two do not know each other, it could corroborate Johnson's assertions that the letter was written by someone else pretending to be him. Johnson also requested that the unidentified staff member who allegedly gave Swiekatowski the letter be called as a witness. At the first disciplinary hearing, Swiekatowski testified that Johnson had given the letter to an unnamed staff member to deliver to Cloud. Johnson, who maintains that he did not give a letter to anyone, wanted this unnamed staff member to testify. Johnson explains that, without these two witnesses, Wickman would be left only with his word against Swiekatowski's, and Wickman would certainly believe Swiekatowski.

As for Kind's denial of Johnson's request for Cloud to be a witness, Kind explained that, per §DOC 303.84(4)(b), Cloud was unavailable because he had been transferred to a different institution. With regard to Johnson's request for the unnamed staff member, Kind allowed DeGroot, the institution complaint examiner, to testify. Apparently, the letter had been deposited in the inmate complaint box in the general population unit. According to Kind, DeGroot retrieved the documents in the inmate complaint box, including the letter, and then delivered the letter to Swiekatowski. Thus, DeGroot was technically the staff member who handed Swiekatowski the letter, even though it is clear that he was not the unnamed staff member that Swiekatowski had referenced during his testimony at the first hearing.

A jury could reasonably conclude that Kind deprived Johnson of his right to call witnesses who possessed relevant information that would corroborate his denials of having written the letter or having arranged for its delivery and that he was prejudiced by those deprivations. With regard to Cloud, it would be reasonable to conclude that Kind's reliance on §DOC 303.84(4)(b) to deny

Johnson's request was improper.  That provision states that a requested witness who is an inmate "shall attend" the disciplinary hearing unless one of several circumstances, including transfer to a different institution, exists.  Although Cloud's *attendance* at the hearing could be excused due to his transfer, Kind does not explain why Cloud could not provide a written statement in response to the questions Johnson submitted via his advocate as permitted by Wis. Stat. §DOC 303.84(3) or why he could not testify via telephone or video conference as permitted by Wis. Stat. §DOC 303.80(4).  Given the potential importance of Cloud's testimony in corroborating Johnson's version and given that Swiekatowski had ensured Cloud's unavailability by waiting until after he was transferred to give Johnson the conduct report, a jury could reasonably conclude that Kind denied Johnson's right to due process when he failed to consider allowing Cloud to testify by written statement or telephone.  Given Johnson's assertion that Cloud would confirm that he and Johnson had never met and had no dealings with each other, a jury could also reasonably conclude that Johnson was prejudiced by Kind's decision not to allow Cloud to testify.

A reasonable jury could reach the same conclusion with regard to Kind's denial of Johnson's request for the unnamed staff member.  *See* Dkt. No. 25-1 at 12.  Kind asserts that he granted Johnson's request as it was written and allowed DeGroot to testify because DeGroot handed the letter to Swiekatowski after he retrieved it from the inmate complaint box.  But Johnson asserts that Kind's overly technical interpretation of Johnson's request led to an absurd result.  According to Johnson, Swiekatowski did not testify during the first hearing that the letter had been placed in the inmate complaint box.  He testified only that Johnson had given the letter to a staff member.  As such, Johnson inartfully phrased his request, assuming that the unnamed staff member who he allegedly gave the letter to was the same person who gave the letter to Swiekatowski.  A jury could reasonably conclude that Kind took advantage of Johnson's inartful phrasing and

11

provided him with a witness who he knew would have no relevant information about Swiekatowski's assertion that Johnson had given the letter to a staff member. A jury could also reasonably conclude that Johnson suffered prejudice from not being able to question the staff member who Swiekatowski previously testified Johnson had given the letter to. Given these material disputes, neither party is not entitled to summary judgment on this claim.

### III. Wickman Is Entitled to Summary Judgment on Johnson's Claim that Wickman Predetermined Johnson's Guilt.

In the prison disciplinary context, due process requires, in part, that a prisoner have "an opportunity to present testimony and documentary evidence to an impartial decision-maker." *Piggie v. Cotton*, 342 F.3d 660, 663 (7th Cir. 2003). Johnson asserts that Wickman was not "an impartial decision-maker" because he had already determined Johnson's guilt before Johnson had an opportunity to defend himself at the disciplinary hearing. The Seventh Circuit has explained that "[a]djudicators are entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Id.* at 666. To overcome the presumption, a plaintiff must "present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir 2021).

Wickman asserts that Johnson presents no evidence of bias other than the fact that Wickman imposed the same disposition (360 days in segregation) after the hearing that he had offered him before the hearing. As Defendants observe, the Seventh Circuit has explained that imposing the same term after the hearing as was offered before the hearing is not clear evidence of bias because "it suggests only that [the hearing officer] thought the initial offer was fair." *Nelson*, 861 F. A'ppx at 670. But, contrary to Wickman's assertion, this is not the only evidence that Johnson purports to offer.

12

Johnson also submits an email exchange discussing the scheduling of upcoming hearings to review inmates' placement in administrative confinement. In the opening email, a table highlights that Johnson has a conduct report (CR) scheduled for January 7, 2018 with disciplinary segregation (DS) time anticipated. Dkt. No. 36-1 at 51-52. In response, Wickman states, "[Redacted] has a pending CR which he will receive DS time for." *Id.* Johnson believes the redacted name is his and that Wickman's statement shows that he had already made up his mind regarding Johnson's guilt before the disciplinary hearing. The Court ordered Defendants to file an unredacted version of the email under seal, which they did, and the Court has confirmed that the redacted name is *not* Johnson's. Accordingly, the email is not "clear evidence" of Wickman's bias.

Johnson also asserts that in a conversation with Wickman prior to the hearing, Johnson insisted he was innocent. In response Wickman said, "I believe you are guilty. I talked to John Kind and the Deputy Warden and they agree you should get the max, 360 days." Dkt. No. 82 at ¶39. While the comment could be viewed as Johnson characterizes, it also could be viewed as Wickman explaining in response to Johnson's assertions of innocence that the evidence he had reviewed as part of his pre-hearing review supported a finding of guilt and that, if found guilty, Kind and the deputy warden agreed that a maximum disposition of 360 days would be appropriate. Given this latter interpretation, the Court cannot conclude that this comment, without more, is "clear evidence" of Wickman's bias. Accordingly, Johnson's evidence "falls short of satisfying the high evidentiary burden required to prove bias." *Nelson*, 861 F. App'x 667, 670 (7th Cir. 2021) (citing *Piggie*, 342 F.3d at 666 ("the constitutional standard for impermissible bias is high")). Wickman is entitled to summary judgment.

13

Case 2:19-cv-00972-BHL   Filed 04/15/22   Page 13 of 14   Document 88

## CONCLUSION

**IT IS THEREFORE ORDERED** that Johnson's motion for summary judgment (Dkt. No. 66) is **DENIED** and Defendants' motion for summary judgment (Dkt. No. 72) is **GRANTED** with respect to Johnson's claims against Wickman and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant Wickman is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Johnson's motion to withdraw the declaration of Matthew Richard (Dkt. No. 80) is **GRANTED**.

The Court will schedule a telephonic status conference to discuss next steps.

Dated at Milwaukee, Wisconsin on April 15, 2022.

s/Brett H. Ludwig
BRETT H. LUDWIG
United States District Judge
